Slip Op. 11-147

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CLEARON CORPORATION AND OCCIDENTAL CHEMICAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> ARCH CHEMICALS, INC., <br><br> Defendant-Intervenor. | Before: Judith M. Barzilay, Senior Judge <br><br> Court No. 10-00377 |

[Plaintiffs' motion for judgment on the agency record denied.]

Dated: November 30, 2011

*Gibson, Dunn & Crutcher LLP*, (*Daniel J. Plaine*, *J. Christopher Wood*, and *Andrea F. Farr*), for Plaintiffs Clearon Corporation and Occidental Chemical Corporation.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *David D'Alessandris*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*David Richardson*), of counsel, for Defendant United States.

*Blank Rome LLP*, (*Larry A. Hampel*), for Defendant-Intervenor Arch Chemicals, Inc.

## OPINION

BARZILAY, Senior Judge:  Plaintiffs Clearon Corp. and Occidental Chemical Corp. (domestic producers), move for judgment upon the agency record pursuant to USCIT Rule 56.2,

challenging a decision of the United States Department of Commerce ("Commerce") during an administrative review of the antidumping duty order covering chlorinated isocyanurates from the People's Republic of China for the 2008-09 period of review. *See Chlorinated Isocyanurates from the People's Republic of China*, 75 Fed. Reg. 70,212 (Dep't of Commerce Nov. 17, 2010) (final results admin. review), as amended by *Chlorinated Isocyanurates from the People's Republic of China*, 75 Fed. Reg. 76,699 (Dep't of Commerce Dec. 9, 2010) (correction to final results) ("*Final Results*"); *see also Issues and Decision Memorandum for the 2008 – 2009 Administrative Review of Chlorinated Isocyanurates from the People's Republic of China*, A-570-898 (Nov. 10, 2010), *available at* http://ia.ita.doc.gov/frn/summary/PRC/2010-29020-1.pdf ("*Decision Memorandum*"). Specifically, Plaintiffs challenge Commerce's exclusion from the best available information certain surrogate company financial statements that Commerce determined were tainted by subsidies. The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). For the reasons set forth below, the court sustains the *Final Results*.

## I. STANDARD OF REVIEW

For administrative reviews of antidumping duty orders, the court sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir.

2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see also Catfish Farmers of Am. v. United States*, 33 CIT __, __, 641 F. Supp. 2d 1362, 1366 (2009) ("The administrative record for an antidumping duty administrative review may support two or more reasonable, though inconsistent, determinations on a given issue.").

Separately, the two-step framework provided in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984) ("*Chevron*"), governs judicial review of Commerce's interpretation of the antidumping statute. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005); *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1030 (Fed. Cir. 2007). "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under *Chevron*." *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1382 (Fed. Cir. 2001); *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1359 (Fed. Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to *Chevron*.").

## II. DISCUSSION

Commerce calculates antidumping duty margins by comparing the "normal value" of the subject merchandise with its actual or constructed export price. 19 U.S.C. § 1677b(a). In the non-market economy context Commerce approximates normal value by using the "best available information" from surrogate countries and companies. 19 U.S.C. § 1677b(c)(1). Included is "general expenses and profit," *id.*, which Commerce calculates using financial ratios derived

Case 1:10-cv-00377-JMB   Document 34   Filed 11/30/11   Page 4 of 12

Court No. 10-00377                                                                                                  Page 4

from financial statements of one or more surrogate companies. Among the criteria Commerce uses to select the best available financial statements (reliability, availability, quality, specificity, contemporaneity), Commerce generally avoids information tainted by subsidies. *Catfish Farmers of Am.*, 641 F. Supp. 2d at 1378, 1380.

Commerce adopted this criterion from the legislative history to the 1988 amendments to the antidumping statute, which noted that Commerce should avoid prices that "it has reason to believe or suspect may be subsidized," and further explained that Commerce need not "conduct a formal investigation to ensure that such prices are not subsidized, but rather . . . [should] base its decision on information generally available to it at that time." Omnibus Trade and Competitiveness Act of 1988, H.R. Rep. No. 100-576, at 590 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1623-24 ("H.R. Report"). Other than this short statement in the legislative history, Congress provided no further guidance as to what would constitute a reasonable basis to believe or suspect that a price may be subsidized, leaving further development to Commerce in its discretion.

Commerce, in turn, has chosen to address the issue, case-by-case, through administrative practice, and has identified some general guideposts: (1) If a financial statement contains a reference to a specific subsidy program found to be countervailable in a formal CVD determination, Commerce will exclude that financial statement from consideration. (2) If a financial statement contains only a mere mention that a subsidy was received, and for which there is no additional information as to the specific nature of the subsidy, Commerce will not exclude the financial statement from consideration. *See Issues and Decision Memorandum for the Final Results of the 3rd New Shipper Reviews: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, A-552-801, at 4-5 (Dep't of Commerce June 15, 2009), *available at*

http://ia.ita.doc.gov/frn/summary/VIETNAM/E9-14607-1.pdf ("*Decision Memorandum for Frozen Fish from Vietman*").

In the *Preliminary Results*, Commerce used the financial statements of two Indian companies, Aditya Birla Chemicals Limited ("Aditya") and Kanoria Chemicals & Industries Limited ("Kanoria"), to calculate the financial ratios for the respondent. *See Chlorinated Isocyanurates From the People's Republic of China*, 75 Fed. Reg. 27,302, 27,307 (Dep't of Commerce May 14, 2010) (prelim. results); *see also Decision Memorandum* at 15. The respondent challenged Commerce's decision to include Aditya's financial statements, arguing that the reference to "Capital Subsidy" in the annual report reflected the receipt of a subsidy that Commerce found countervailable in a prior administrative proceeding. Respondent's Admin. Case Br. 11 (citing *Polyethylene Terephthalate Film Sheet, and Strip from India*, 71 Fed. Reg. 7,534 (Dep't Commerce, Feb. 13, 2006) ("*PET Films*")). In their rebuttal brief, Plaintiffs argued that the particular reference to "Capital Subsidy" did not reflect a countervailable subsidy, but instead referred to a financial contribution made by the majority owners of the company, not the government. Pl. Admin. Rebuttal Br. 6, 9. Plaintiffs did not make any other arguments; they did not mention or cite *PET Films*, or present any arguments about Commerce's policy of handling information tainted by subsidies. This is all Plaintiffs said in their rebuttal brief on this issue:

> [Respondent's] second argument, that "Aditya received Capital Subsidies," is even less meritorious and is contradicted by the plain language of the ABCIL financial statement. [Respondent's] brief (at p. 11) cites several instances in which the term "Capital Subsidy" appears in the ABCIL financial statement but conspicuously omits any reference to the specific note in the financial statement that explains the meaning of the term. In fact, page 39 of the ABCIL annual report states that "During the year, the Company has reclassified its treatment in respect of Capital Subsidy *related to Promoter's Contribution* and accordingly treated the same as Capital Reserve." [Aditya] *Annual Report* at 39 (emphasis added). In other words, the "Capital Subsidy" on which [Respondent] bases its argument has nothing to do with the Government of India. It is a contribution of funds from the

>      Promoters of ABCIL, who are shown in the annual report as the majority owners
> of the company.

*Id.* (citation omitted). Commerce reviewed the issue and concluded that "Capital Subsidy" did implicate an impermissible subsidy program that Commerce had found countervailable in *PET Films*. *See Decision Memorandum* at 17. Accordingly, Commerce did not use Aditya's financial statements in its ratio calculation, and instead relied on Kanoria's financial information. *Id.*

Plaintiffs seek a remand instructing Commerce to include Aditya's financial information in the agency's financial ratio calculation. Pl. Br. 15-16. Plaintiffs raise a substantial evidence challenge to Commerce's action, repeating their argument at the administrative level that the subsidies mentioned Aditya's financial statements were not from the Government of India. Pl. Br. 7-8. Plaintiffs then introduce a new argument, not made before the agency, that the "Capital Subsidy" program identified in *PET Films* lacked sufficient specificity to justify exclusion under Commerce's policy for handling information tainted by subsidies. Pl. Br. 9-15.

### A. Commerce's Interpretation of Aditya's Financial Statements

On the first issue, Plaintiffs argue that Commerce misread the plain language of Aditya's annual report, which they contend explains that the "Capital Subsidy" entry represents a financial contribution by the majority owners of Aditya and not the Government of India. Pl. Br. 7-8. According to Plaintiffs, Commerce misread page 38 of the Aditya's annual report (which references three types of "Capital Subsidy/Government Grant") and similarly misread page 39 of the report (which, in Note 2, states that Aditya "has reclassified its treatment in respect of Capital Subsidy related to Promoter's Contribution and accordingly treated the same as Capital Reserve"). JA 241, 242. Plaintiffs argue that the language in Note 2 demonstrates that the "Capital Subsidy" entry is not a government subsidy but a financial contribution by the promoters, who, in this case, are the majority owners of the company. Pl. Br. 7-8.

In the *Final Results*, Commerce explained that

> page 38 of Aditya's financial statements characterizes "Capital Subsidy" in multiple ways: (1) Capital subsidy/Government grants are accounted for where it is reasonably certain that the ultimate collection will be made; (2) Capital subsidy/Government grants related to specific non depreciable assets are credited to capital reserve account; (3) Capital subsidy/Government grants related to specific depreciable assets are credited to capital reserve account and are recognized as income in profit and loss statement on a systematic and rational basis over the useful life of the assets; (4) Capital subsidy/Government grants in the nature of Promoter's Contribution are credited to capital reserve account. **In other words, Aditya's financial statements clearly indicate that Aditya receives multiple types of aid through "Capital subsidy/Government grants" and that the aid Aditya receives is not limited to "Promoter's Contribution."** Thus, because "Capital Subsidy" is a program the Department has found provides countervailable benefits, the Department has reason to believe or suspect that Aditya received countervailable benefits.

*Decision Memorandum* at 18 (emphasis added).

Commerce reasonably concluded that the three forms of Capital Subsidies identified in the annual report (depreciable assets, non-depreciable assets, and Promoter's Contribution) constituted evidence that Aditya received multiple forms of government aid. *Id.* Commerce also considered the language in Note 2, which addresses only Promoter's Contribution, and reasonably concluded that the subsidies were not limited to Promoter's Contribution but also included subsidies related to depreciable and non-depreciable assets. *Id.* at 18. Commerce did not agree with Plaintiffs' view that the language in Note 2 proves Aditya receives no government subsidies. *Id.* Commerce therefore did not share Plaintiffs' inferences and assumptions about the financial statements. *See Catfish Farmers of Am.*, 641 F. Supp. 2d at 1380 ("Commerce refused to indulge [petitioner's] hoped for inferences and assumptions. . . .").

Plaintiffs' argument ultimately fails because it requires the court to choose between what appear to be two reasonable interpretations of Aditya's financial statements. For example, one might reasonably infer, as suggested by Plaintiffs, that the references to the subsidies were mere

Case 1:10-cv-00377-JMB   Document 34   Filed 11/30/11   Page 8 of 12

Court No. 10-00377                                                                                          Page 8

statements of Aditya's accounting policy and did not reflect actual government infusions during the period of review. Pl. Br. 7-8, Pl. Reply Br. 8. Alternatively, one might also reasonably infer, as Commerce did, that the references to the "Capital Subsidy" program (which Commerce previously identified as countervailable in *PET Films*), indicated that Aditya received multiple forms of government aid during the review period in the form of depreciable and non-depreciable assets, and perhaps even Promoter's Contribution. *See Decision Memorandum* at 18.

A well-established principle of substantial evidence review is that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo*, 383 U.S. at 620; *see also Catfish Farmers of Am.*, 641 F. Supp. 2d. at 1366 ("The administrative record for an antidumping duty administrative review may support two or more reasonable, though inconsistent, determinations on a given issue."). Although Plaintiffs put forth what might be considered a reasonable interpretation of the Aditya financial statements, Commerce's choice was also reasonable and therefore must be sustained.

**B. Commerce's Policy of Excluding Information Tainted by Subsidies**

Plaintiffs next argue for the first time that Commerce's decision to reject Aditya's financial statements violated its policy of requiring reference to a "specific subsidy program" before excluding it as a source of surrogate value information. Pl. Br. 9-15. In particular, Plaintiffs dispute Commerce's reliance on *PET Films* (a CVD determination from 2006) to establish a "specific subsidy program." Pl. Br. 13-15; Pl. Reply Br. 1-7; *see Issues and Decision Memorandum for the 2003 Countervailing Duty Administrative Review of Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results*, C-533-825, at 6 (Feb. 13, 2006), *available at* http://ia.ita.doc.gov/frn/summary/INDIA/E6-1989-1.pdf; *see also Notice of*

*Preliminary Results and Rescission in Part of Countervailing Duty Administrative Review: Polyethylene Terephthalate Film, Sheet, and Strip From India*, 69 Fed. Reg. 18,542, 18,547 (Dep't of Commerce Apr. 8, 2004) (prelim. results of admin. review) unchanged in *Final Results of Countervailing Duty Administrative Review: Polyethylene Terephthalate Film, Sheet, and Strip from India*, 69 Fed. Reg. 51,063 (Dep't of Commerce Aug. 17, 2004) (final results of admin. review). Plaintiffs maintain that *PET Films* did not establish "Capital Subsidy" as a specific subsidy program because Commerce applied facts available to make its determination. Pl. Br. 13-14. Plaintiffs argue that Commerce was unable to define "Capital Subsidy" with sufficient specificity in *PET Films* for it to serve as a valid reference to a specific subsidy program in this case. Pl. Br. 9-14; Pl. Reply Br. 5-7.

    Plaintiffs unfortunately did not present these arguments to Commerce when they had the opportunity. As noted above, respondent in its case brief placed the issue of *PET Films* and the "Capital Subsidy" program squarely in play. The time for Plaintiffs to raise the above arguments was in their rebuttal brief to the agency. *See* 19 C.F.R. § 351.309(d) (2010). When reviewing Commerce's antidumping determinations, the Court of International Trade requires litigants to exhaust administrative remedies "where appropriate." 28 U.S.C. § 2637(d) (2006); *see also* 19 C.F.R. § 351.309(c)(2) (2010) ("The case brief must present all arguments that continue in the submitter's view to be relevant to the final determination."). "This form of non-jurisdictional exhaustion is generally appropriate in the antidumping context because it allows the agency to apply its expertise, rectify administrative mistakes, and compile a record adequate for judicial review-advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Carpenter Tech. Corp. v. United States,* 30 CIT 1373, 1374-75, 452 F. Supp. 2d 1344, 1346 (2006) (citing *Woodford v. Ngo,* 548 U.S. 81, 89 (2006)); *see also Corus Staal BV*

*v. United States,* 502 F.3d 1370, 1379 (Fed. Cir. 2007) (noting that the Court of International Trade "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases."); *Fuwei Films (Shangdong) Co. v. United States,* 35 CIT __, __, 791 F. Supp. 2d 1381, 1384 (2011) ("An important corollary requirement to exhaustion of administrative remedies is Commerce's own regulatory requirement that parties raise all issues within their administrative case briefs. . . . This requirement works in tandem with the exhaustion requirement and promotes the same twin purposes of protecting administrative agency authority and promoting judicial efficiency.").

By failing to raise at the administrative level their arguments about *PET Films* and Commerce's policy concerning surrogate information tainted by subsidies, Plaintiffs deprived Commerce of the opportunity to address those issues and make a "determination, finding, or conclusion." 19 U.S.C. § 1516a(b)(1). This is especially important here where Plaintiffs' new arguments implicate Commerce's gap-filling, policy-making discretion. For the court to review properly Commerce's exercise of that discretion, Commerce must "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 48 (1983). Commerce, though, had no reason to provide detailed explanations to arguments that were never made. The statute requires Commerce to address "relevant arguments, made by interested parties." 19 U.S.C. § 1677f(i)(3)(A). As the excerpt quoted above from Plaintiffs' rebuttal brief makes clear, Plaintiffs focused their arguments *solely* on proposed interpretations of Aditya's financial statements. Commerce fully addressed Plaintiffs' arguments about how to interpret the Aditya financial statements. There was simply no reason for Commerce to do more, especially when operating under the challenges imposed by tight statutory deadlines. Plaintiffs failed to raise any issues about *PET Films* or Commerce's

policy of requiring reference to a "specific subsidy program." *See Decision Memorandum for Frozen Fish from Vietnam* at 4-5. As a result, Commerce did not have the opportunity to "apply its expertise," potentially "rectify administrative mistakes," or "compile a record adequate for judicial review." *Carpenter*, 452 F. Supp. 2d at 1374-75. Requiring exhaustion of administrative remedies on these new arguments is therefore appropriate. The court will not consider Plaintiffs' new arguments regarding Commerce's exclusion of the Aditya financial statements. The court will instead sustain Commerce's decision.

### III. CONCLUSION

One final note should be made. The issue here arose because Commerce had limited data points for the financial ratio calculations. There were initially only two potential surrogate companies, Aditya and Kanoria, with the exclusion of Aditya leaving Commerce with one. It is unfortunate for Plaintiffs that the elimination of Aditya left only Kanoria's information. However, the burden of creating an adequate record ultimately falls upon Plaintiffs. *See QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he burden of creating an adequate record lies with [interested parties] and not with Commerce.") (internal quotation marks and citation omitted).

To conclude, Commerce's decision to exclude Aditya's financial statements from its financial ratio calculation is reasonable on this administrative record. Plaintiffs' motion for judgment on the agency record is denied. Judgment will be entered accordingly.


Dated: <u>November 30, 2011</u>                                     /s/   <u>Judith M. Barzilay</u>
       New York, NY                                                      Judith M. Barzilay, Senior Judge

Slip-Op. 11-147

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CLEARON CORPORATION AND OCCIDENTAL CHEMICAL CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES,<br><br>　　　　Defendant,<br><br>ARCH CHEMICALS, INC.,<br><br>　　　　Defendant-Intervenor. | Before: Judith M. Barzilay, Senior Judge<br><br>Court No. 10-00377 |

**JUDGMENT**

Upon consideration of Plaintiffs' motion for judgment on the agency record, the accompanying briefs submitted by the parties, and all other papers filed in this action, and upon due deliberation, it is hereby

**ORDERED** that Plaintiffs' motion is denied; and it is further

**ORDERED** that the *Final Results* are sustained.

Dated: November 30, 2011　　　　　　　　　　/s/   Judith M. Barzilay
New York, NY　　　　　　　　　　　　　　　Judith M. Barzilay, Senior Judge